IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) |
| | ) |
| Email account: **Vim5144@psu.edu** | ) Magistrate No. *14-186mj* |
| Located at: | ) |
| Computer Building | ) **[UNDER SEAL]** |
| University Park, PA 16802 | ) |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I, Dale R. Carlson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation, United States Department of Justice, and have been since 1998. I am currently assigned to the Pittsburgh Division of the FBI, Domestic Terrorism Squad. As part of my duties, I investigate violations of federal law, including explosives violations and threats to national security. I gained experience in the conduct of such investigations through extensive training and everyday work related to these types of investigations.

2. As a federal agent, your affiant is authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I make this affidavit in support of an application for a search warrant to search the following email address: **vim5144@psu.edu** and seize instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Section 842(a)(1), that is, engaging in the business of importing, manufacturing, or dealing in explosive materials without a license issued under this chapter; and Title 26, United States Code, Section 5861, that is, the unlawful receipt, possession, or transfer of an unregistered firearm. This email account is maintained by the Pennsylvania State University and the contents of the account have been preserved by the University pending the

1

potential issuance of this warrant.

4. The facts in this affidavit come from my own participation in the investigation, together with information provided by other federal, state, and local law enforcement officers, as well as the results of witness interviews and physical evidence as set forth in more detail herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction." 18 U.S.C. § 2703(a), 2711.

## PROBABLE CAUSE

6. On January 24, 2014, the Altoona Police Department (APD) was dispatched to 118 North 9th Avenue, Altoona, Pennsylvania (PA), in the Western District of Pennsylvania, to speak to a landlord of the residence, William Kitt, who reported a possible marijuana grow operation in the building. Kitt showed APD a potted plant in one of the bedrooms occupied (solely) by Penn State Altoona student Vladislav Miftakhov.[1]

7. APD located Miftakhov on the campus and was given his Miranda warnings. Upon arrival at the residence, Miftakhov consented to a search of his residence. Miftakhov gave officers a scale and marijuana seeds.

8. During the consent search, APD found a suitcase in the room. Observed inside of the suitcase was an aluminum container with an exposed fuse and a smaller metal cartridge with an exposed fuse (commonly known as a "cricket"[2]). Also observed were numerous items including a package labeled "1 lb. of Atomized Magnesium 100-200 mesh", a package labeled "1 lb. of Potassium Perchlorate Chinese", a roll of magnesium cord, approximately 40 additional empty

---

1 Miftakhov was born in Russia and became a Legal Permanent Resident during December of 2007.
2 The smaller metal cartridge is a cartridge which usually contains a pressurized gas, such as carbon dioxide, for the purpose of using it to pressurize, for example, paintball guns. They are commonly referred to as "crickets" when they are emptied of their gas, filled with explosives, and used as destructive devices.

2

metal cartridges, and loose fuses. APD asked Miftakhov what he intended on doing with the devices that had the attached fuses and Miftakhov initially stated he was making fireworks. When asked again, Miftakhov said he was going to "blow things up." APD asked Miftakhov what was inside the devices and Miftakhov answered Potassium Perchlorate and Atomized Magnesium.

9. Your affiant is an FBI Certified Bomb Technician and through my training and experience I know that Potassium Perchlorate and Magnesium can be mixed to create flash powder, an explosive mixture that is extremely sensitive to impact, friction, static spark, and heat.

10. Miftakhov stated he had mixed the Magnesium and Potassium Perchlorate together to make the "flash Powder" explosive, which he placed into the whip cream dispenser, and then added the magnesium cord and a fuse to complete the device. Miftakhov also stated that he purposely emptied all of the smaller cartridges and was transforming them into explosive devices by drilling holes into them before filling them with his "flash powder" mixture to make the "cricket" devices. Miftakhov indicated that he knew that the chemicals he was mixing would "blow up". Miftakhov also indicated that he constructed the devices in his room at 118 N. 9th Avenue. Miftakhov stated he previously experimented with similar devices in California, where he previously lived.

11. One witness, Andrew Leff, resides in the same house as Miftakhov. Leff advised during approximately early to mid-January 2014, he was approached by Miftakhov who had three metal cartridges in his possession. Leff observed the cartridges to each have a protruding fuse. Miftakhov told Leff each of the cartridges had 1.5 grams of Magnesium and 1.5 grams of Potassium. Miftakhov and Leff walked to a nearby field, where Miftakhov placed one in the ground, and lit it with a lighter. According to Leff, the cartridge exploded, and Leff stated he was surprised at how large and loud of an explosion it created. Leff further stated that Miftakhov set off a second cartridge with the same result. Finally, as Miftakhov was preparing to set off the third

cartridge, Leff told Miftakhov that two were enough and that they should leave as neighbors were stepping outside to see what was happening.

12. According to Leff, about one week after that incident, Miftakhov approached Leff again, this time with a much larger "canister", and said that there was approximately 200 grams of the explosive material within it. According to Leff, he refused to join Miftakhov in detonating the device.

13. On January 26, 2014, the Altoona Police Department obtained a Search Warrant for a further search of the residence/room of Miftakhov at the 118 N. 9th Avenue residence. Pursuant to the warrant, electronic storage media and cell phones were seized from Miftakhov's room. Also seized during this search was a .44 caliber shell casing. Inside the shell casing was a handwritten scroll reading "If you find this, you will never find me", signed by Miftakhov. On the reverse side of the scroll was a symbol consisting of the letter "A" with a circle around it. Internet research indicates that this symbol is consistent with that used in the Anarchist movement.

14. On January 30, 2014, FBI Pittsburgh obtained a second search and seizure warrant for Miftakhov's two computers and three cell phones seized from his room. This review is ongoing, but preliminary analysis of the computers shows that the computer was used for recent Internet web searches for magnesium fuses, flash powder, several videos viewing explosions caused by different types of bombs, accessing of an Anarchist movement Facebook page, and searches for merchandise with the "circled-A" symbol. Analysis also shows the usage on the computer of the email address **vim5144@psu.edu.**

15. Importantly, your affiant is aware that during an interview at the Altoona Police Department, Miftakhov stated that he had ordered and purchased the Magnesium, Potassium Perchlorate, and the aluminum container (a whip cream dispenser) over the Internet and that he had the materials shipped to his residence at 118 N. 9th Avenue.

16. On February 7, 2014, Pyro Chem Source, a company located in Hayward, Minnesota, provided records that confirmed that on December 4, 2013, Vladislav Miftakhov, 118 North 9th Avenue, Altoona, PA, purchased 1 pound of Potassium Perchlorate and 1 pound of Atomized Magnesium from Pyro Chem Source over the Internet using the Amazon Marketplace. Pyro Chem Source records show the Potassium Perchlorate and Atomized Magnesium were shipped to Miftakhov via UPS, arriving on December 9, 2013 at his Altoona, PA address.

17. On February 18, 2014, your affiant was informed by Amazon.com that Amazon requires an associated email address to be provided by a user when they create an account in order to conduct transactions. Furthermore, Amazon confirmed that they confirm orders made by users via that email account.

18. On or about January 28, 2014, Miftakhov indicated to the Department of Homeland Security/Immigration and Customs Enforcement that one of his email accounts was **vim5144@psu.edu**.

19. Based on your affiant's training and experience as a Special Agent for the Federal Bureau of Investigation, your affiant knows that email accounts have evolved to become a central communications platform in society today. In the context of Internet purchases and other transactions which occur over the Internet, email account(s) are often used to facilitate communications between the parties to the transactions, to include transaction receipts. In the context of Internet searching for information, email accounts can often be used as facilities in which a visitor to a website may be sent additional or related correspondence upon the request of the user. Furthermore, email accounts may also be used to facilitate communications between like-minded individuals who share common interests or plans. As such, I know based on my training and experience that email accounts, such as the ones articulated in Attachment A, are likely repositories of evidence of the Target Offenses in this case, as articulated in Attachment A "Things to be

5

Seized."

20.     Therefore, based on the foregoing articulated facts, which include the fact that Miftakhov was actively manufacturing homemade explosives and destructive devices in his apartment, and that such manufacturing clearly involved his usage of internet communications, your affiant has probable cause to believe evidence, fruits, and instrumentalities of crime, detailed in Attachment A, exists within Miftakhov's email account **vim5144@psu.edu**, pertaining to the illegal manufacture of explosives and unregistered destructive devices in violation of Title 18, United States Code, Section 842(a)(1); and Title 26, United States Code, Section 5861.

21.     It is further respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this Application, including the Application, Affidavit, and Search Warrant, and the requisite inventory notice.

_____
DALE R. CARLSON
Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me
this _24th_ day of February, 2014.

_____
CYNTHIA R. EDDY
United States Magistrate Judge

## ATTACHMENT A

The Pennsylvania State University shall provide:

1. Content of all communication within and associated with the Target account:

    **Vim5144@psu.edu**

2. All identifying information pertaining to the subscriber of the above account, including log-in IP addresses.

## PARTICULAR THINGS TO BE SEIZED BY THE GOVERNMENT

All evidence pertaining to a violation of Title 18, United States Code, Section 842(a)(1) (engaging in the business of importing, manufacturing, or dealing in explosive materials without a license); and Title 26, United States Code, Section 5861 (the unlawful receipt, possession, or transfer of an unregistered firearm), including but not limited to:

1. The content of any and all electronic communication that pertains to the purchase, trading, acquisition, manufacture, selling, shipping, or possession of explosives, explosive precursors, destructive devices, components of destructive devices, and tools that can be used in the manufacture of explosives and/or destructive devices.

2. The content of any and all electronic communication that relates to the motivation or intent to acquire, manufacture, use, sell, ship/transport, or possess explosives, explosive precursors, or destructive devices.

3. The content of any and all communication related to the registration of any firearm or destructive device in the National Firearms Registry and Transfer Record, Licensing to Manufacture Explosives, or any other certification pertaining to explosives and/or destructive devices.

4. Any and all records or other information pertaining to the subscriber of the Target account, including but not limited to associated email accounts, login IP addresses, and session times and durations.